IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-02238-CNS

BRENDA VIRUEL ARIAS,

    Petitioner,

v.

JOHNNY CHOATE, in his official capacity as warden of the Aurora Contract Detention Facility owned and operated by GEO Group, Inc.,
JOHN FABBRICATORE, in his official capacity as Field Office Director, Denver, U.S. Immigration & Customs Enforcement,
ALEJANDRO MAYORKAS, in his official capacity as Secretary, U.S. Department of Homeland Security,
TAE D. JOHNSON, in his official capacity as Acting Director of Immigration & Customs Enforcement (ICE), and
MERRICK GARLAND, in his official capacity as Attorney General, U.S. Department of Justice,

    Respondents.

---

**ORDER**

---

Before the Court is Petitioner's Motion for Award of Attorneys' Fees Pursuant to the Equal Access to Justice Act ("EAJA") (ECF No. 24). For the reasons set forth below, Petitioner's Motion is GRANTED.

**I. BACKGROUND**

This civil action arises from Respondents' detention of Petitioner pending adjudication of her immigration removal proceedings (*see* ECF No. 1). Petitioner filed a writ of habeas corpus challenging the length of her detention that the Court granted on September 23, 2022 (ECF No. 16).

Petitioner was born in Mexico in 1993 and has lived in the United States since she was approximately two years old (ECF No. 24 at 3). Petitioner has been diagnosed with intellectual developmental disorders, substance use disorders, and other mental health disorders (*id.*). One of the symptoms she experiences includes suicidal ideations (*id.*). Before being detained by the Department of Homeland Security ("DHS"), Petitioner was receiving mental health services, and being near her daughter reduced her experiences of suicidal ideations (*id.* at 3–4).

In 2017, Petitioner was arrested in California on sexual assault charges, and in 2018 she was sentenced to 179 days in jail, as well as five years of supervised probation with additional conditions (ECF No. 14 at 2–3). On June 22, 2021, in California, DHS served Petitioner with a Notice to Appear and detained her pending a final decision in her immigration case on the grounds that she was removable based on her criminal conviction (ECF No. 24 at 4; ECF No. 14-1 at 3–4). Soon after detaining Petitioner, DHS transferred her to the Immigration & Customs Enforcement ("ICE") Aurora Contract Detention Facility (ECF No. 24 at 4). Petitioner appeared before an Immigration Judge ("IJ") several times to schedule master and competency hearings, and to secure a qualified representative (ECF No. 14-1 at 4–5). The IJ eventually held a hearing on Petitioner's application for relief from removal in December 2021, and issued a written decision denying her relief from removal in January 2022 (*id.* at 5). After Petitioner appealed the decision and it was remanded to the IJ for reconsideration in June 2022, the IJ held a custody redetermination hearing on August 22, 2022, concluding Petitioner was subject to mandatory detention (*id.* at 6–7; ECF No. 1-1 at 39–40).

Being detained and separated from her daughter impacted Petitioner's mental health (ECF No. 24 at 4). She engaged in at least ten incidents of self-harm and attempted suicide on three occasions (*id.*). Petitioner filed a petition for writ of habeas corpus with the Court on August 30,

2022 (ECF No. 1). In her habeas petition, Petitioner challenged her continued detention without individualized review as a violation of the Due Process Clause of the Fifth Amendment (*id.*). In response, Respondents argued Petitioner was being lawfully held pursuant to 8 U.S.C. § 1226 (ECF No. 14). On September 26, 2022, the Court granted Petitioner's petition for a writ of habeas corpus, finding her detention without individualized review unreasonable and ordering a bond hearing where DHS had the burden of justifying Petitioner's continued detention by clear and convincing evidence (ECF No. 16). On October 3, 2022, the Aurora Immigration Court held a bond hearing where ICE failed to meet its burden and the IJ ordered Petitioner's release (ECF No. 24 at 5).

On February 7, 2023, Petitioner filed a motion for award of attorneys' fees pursuant to the EAJA (*id.* at 1). Petitioner argues that she meets the requirements of the EAJA and is entitled to attorneys' fees and expenses because she is a prevailing party, has a net worth under two million dollars, the government's position was not substantially justified, and there are no special circumstances that make an award of attorneys' fees unjust (i*d.* at 2). Respondents argue that the Court should deny the motion because sovereign immunity bars recovery of attorneys' fees and the EAJA waiver of sovereign immunity does not apply to habeas petitions (ECF No. 25 at 1). Respondents further argue that even if the EAJA was applicable, the Court should deny the motion because the government's position was substantially justified (*id.*).

## II.  LEGAL STANDARD

Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a

3

petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

### III.  ANALYSIS

The Court has considered Petitioner's Motion, related briefing, and relevant legal authority. For the following reasons, the Court grants Petitioner's Motion.

### A. A Habeas Proceeding Challenging Immigration Detention is a Civil Action Under EAJA That Waives Sovereign Immunity

Respondents contend that sovereign immunity bars Petitioner from recovering attorneys' fees because the EAJA is a limited waiver of sovereign immunity that only covers civil actions, which must be defined narrowly (ECF No. 25 at 2–3). A habeas proceeding is a unique type of case that is not purely civil, Respondents' argument goes, and thus it is unclear whether Congress intended "any civil action" in the EAJA to include habeas petitions (*id.*). Moreover, waivers of sovereign immunity must be unambiguously and unequivocally expressed in the statutory text, and any ambiguity regarding sovereign immunity waivers must be construed in favor of the sovereign (*id.* at 2). Petitioner argues where, as here, a litigant challenges their immigration detention through

4

a habeas proceeding that this challenge constitutes a "civil action," and therefore the sovereign immunity waiver applies and she may recover attorneys' fees under the EAJA (ECF No. 26 at 2–4). The Court agrees with Petitioner.

Generally, a waiver of sovereign immunity must be "clearly discernable from the statutory text in light of traditional interpretive tools." *F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012). If the waiver is not clearly discernable then it must be construed in the favor of the sovereign. *Id.*; *see also Sloan v. Pugh*, 351 F.3d 1319, 1322 (10th Cir. 2003) (noting that provisions in EAJA must be "construed strictly since the EAJA operates as a waiver of sovereign immunity" (quotations omitted)).

Petitioner argues that the EAJA unambiguously allows for a fee award in "any civil action" and that her case falls within that scope because immigration removal proceedings are civil in nature (ECF No. 26 at 3). As explained further below, the Court agrees with Petitioner that "any civil action" under the EAJA unambiguously applies to habeas petitions in the immigration context.

In the Tenth Circuit, habeas petitions arising from criminal confinement do not qualify for the EAJA's waiver of sovereign immunity (ECF No. 25 at 4–5; ECF No. 26 at 3). *See also Sloan*, 351 F.3d at 1322–23; *Ewing v. Rodgers*, 826 F.2d 967, 970–71 (10th Cir. 1987). As explained in *Sloan*, a habeas petition "challenging confinement arising from a *criminal judgment* is not a 'civil action'" regarding the "procedural endeavor of awarding attorneys' fees under the EAJA." *Sloan*, 351 F.3d at 1323 (emphasis added) (quotations omitted); *see also O'Brien v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005) (observing that "to the extent that a habeas proceeding reviews a *criminal punishment* . . . the habeas proceeding necessarily assumes part of the underlying case's criminal nature" (emphasis added)).

5

Whether a habeas petition that challenges an *immigration* proceeding is civil in nature and falls within the EAJA's sovereign immunity waiver is not so well-settled. In support of her argument that her habeas proceeding is civil in nature and falls within the EAJA's sovereign immunity waiver, Petitioner cites to cases from the Second and Ninth Circuits that have recognized distinctions between different types of habeas petitions, and that have held civil immigration proceedings are included in the phrase "any civil action" in the EAJA (ECF No. 26 at 3). *See also Vacchio v. Ashcroft*, 404 F.3d 663, 670–72 (2d Cir. 2005) (holding that a habeas proceeding challenging immigration detention constitutes a "civil action" under the EAJA but denying relief on other grounds); *In re Hill*, 775 F.2d 1037, 1040–41 (9th Cir. 1985) (holding the EAJA applied to habeas actions by noncitizens seeking admission to the United States). In concluding that immigration habeas proceedings constitute a "civil action" under the EAJA, the Second Circuit analyzed cases regarding EAJA fees in criminal habeas petitions and concluded that the reasoning in those cases is not applicable to petitions that arise in the immigration context. *Vacchio* 404 F.3d at 668–69. For instance, unlike criminal defendants, non-citizens in ICE custody are not eligible for government-provided counsel and immigration claims are often more than a vindication of personal rights but a challenge to regulatory policy. *Id.* at 669 (citing *In re Hill*, 775 F.2d at 1040-41). Therefore, according to the Second Circuit, immigration habeas petitions meaningfully differ from the criminal habeas petitions that courts have held cannot recover fees under the EAJA, and on the basis of this meaningful distinction a petitioner can recover attorneys' fees under the EAJA for immigration habeas petitions. *Id.* at 669, 677.

The Court finds the reasoning of the Second and Ninth Circuits persuasive and consistent with other authority. In immigration habeas proceedings, both the underlying claim and the habeas proceeding are civil proceedings. *See I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("A

deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country itself is a crime."); s*ee Ewing*, 826 F.2d at 970 ("It is of course true that habeas corpus proceedings are characterized as 'civil.'"(citing *Fisher v. Baker*, 203 U.S. 174, 181 (1906))). Although habeas actions are not automatically subject to the rules governing civil actions, Petitioner's immigration habeas proceeding bears no hallmark of a criminal proceeding that would render it a "hybrid" or criminal action outside the ambit of the EAJA. Therefore, Petitioner's immigration habeas proceeding does not fall under a hybrid classification. Traditional interpretive tools can be used to understand that the term "any civil action" under the EAJA includes immigration habeas proceedings under the Act. *See Vacchio*, 404 F.3d at 668–70 (holding habeas petitions challenging immigration detention qualify as a "civil action" for the purposes of the EAJA and referring to the legislative history of the EAJA to resolve ambiguity).

In advancing the contrary argument, Respondents rely on cases from the Fourth and Fifth Circuits holding that all habeas petitions are hybrid in nature, and that for this reason do not fall under the EAJA's "any civil action" provision regardless of whether the underlying action is civil (ECF No. 25 at 4; ECF No. 27 at 1). *See also Obando-Segura v. Garland*, 999 F.3d 190, 194 (4th Cir. 2021) (stating that habeas corpus proceedings are unique, hybrid proceedings, therefore making it ambiguous as to whether they fall under "any civil action" within the EAJA); *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (citing to cases regarding habeas petitions arising out of criminal cases to recognize the hybrid nature of habeas corpus petitions). For instance, in *Obando-Segura*, the Fourth Circuit held a petitioner who prevailed in his application for a writ of habeas corpus seeking release from federal immigration detention could not recover attorneys' fees under the EAJA because the EAJA does not apply to habeas proceedings. 999 F.3d at 191, 197. The

Fourth Circuit determined all habeas corpus proceedings do not fall under the "any civil action" provision in the EAJA because there are no "criminal habeas writs" and "non-criminal habeas writs"—there are merely writs for habeas corpus. *Id.* at 194, 197.[1] The Fifth Circuit in *Barco* only cited cases regarding habeas petitions arising out of criminal cases to recognize the hybrid nature of habeas corpus petitions and did not expand on why immigration habeas petitions should be treated similarly. *Barco*, 65 F.4th at 785.

The Court finds the reasoning of *Obando-Segura* and *Barco* unpersuasive and rejects it. The reasoning is in tension with the Tenth Circuit's decision in *Ewing*, where the Tenth Circuit recognized a distinction between criminal and non-criminal habeas proceedings. 826 F.2d at 971 & n.5 (citing *In re Hill*, 775 F.2d at 1040-41); *see also In re Hill*, 775 F.2d at 1040-41 (holding the EAJA applied to habeas actions by noncitizens seeking admission to the United States). Accordingly, the Court adopts the Second and Ninth Circuit's reasoned conclusion that civil immigration proceedings fall squarely within the EAJA's "any civil action" provision and the statute's sovereign immunity waiver.

Respondents further contend that *Vacchio* runs afoul of the Supreme Court's rule that waivers of sovereign immunity must be unambiguous and strictly construed in scope (ECF No. 25

---

[1] The dissent reached a contrary conclusion to the majority in finding a distinction between civil immigration and criminal habeas proceedings. The Court is persuaded by the dissent in *Obando-Segura* which states a habeas action challenging civil immigration detention plainly qualifies as "any civil action" under the EAJA because immigration habeas petitions do not have both criminal and civil aspects but instead are purely civil in nature. 999 F.3d at 197 (Keenan, J., dissenting) (citation omitted). The dissent's analysis uses traditional interpretive tools, as required by *F.A.A.*, and finds that the waiver of sovereign immunity was clearly discernable in the statutory text. *See id.*; 566 U.S. 284, 291 (2012). The dissent correctly observes that the text of the EAJA indicates that Congress intended to include purely civil habeas proceedings because it qualified the term "civil action" with the word "any" and it placed another category of civil actions outside the scope of the EAJA. *Obando*-Segura, 999 F.3d at 198 (Keenan, J., dissenting). Qualifying the term "civil action" with the word "any" indicates that Congress sought to give the EAJA expansive reach. *Id.* Additionally, the EAJA creates an exception for civil cases sounding in tort but does not include an exception for purely civil habeas action challenging civil immigration detention when it could have done so. *Id*. The dissent further states that nothing in the text of the EAJA suggests that Congress departed from the established understanding that habeas proceedings are civil in nature as the Supreme Court has held for over a century. *Id.* at 197.

at 7). While the scope of Congress's waiver must be clearly discernable from the statutory text, Congress's intent can be stated in many ways and interpretive tools, including consideration of a statute's legislative history, can be used to determine if a sovereign immunity waiver clearly exists. *See F.A.A.* 566 U.S. at 291 ("Congress need not state its intent in any particular way. We have never required that Congress use magic words. To the contrary, we have observed that the sovereign immunity canon 'is a tool for interpreting the law' and it does not 'displace[e] the other traditional tools of statutory construction.'" (citation omitted)). The Supreme Court has also stated that courts "should not take it upon [themselves] to extend the waiver beyond that which Congress intended. Neither, however, should [they] assume the authority to narrow the waiver that Congress intended." *U.S. v. Kubrick*, 444 U.S. 111, 118 (1979) (citations omitted). Regarding the EAJA's statutory interpretation, the Court finds the *Obando-Segura* dissent persuasive as it looked at the plain meaning of the text and its meaning in the context of the statute. 999 F.3d at 197-98. Through interpretive tools of statutory construction and legislative history, it is clearly discernable that "any civil action" applies to immigration habeas proceedings.

Petitioner also argues that the purpose of the EAJA should be considered in interpreting the statute to conclude that under it she is eligible for attorneys' fees (ECF No. 26 at 4–7). Petitioner contends that, when considering the purpose of the EAJA, this consideration supports an award of attorneys' fees for immigration habeas proceedings (*id.*). The Court agrees. The EAJA was designed primarily to ensure that litigants were not deterred from seeking review of unreasonable government action due to the expenses involved in filing an action. *See, e.g., Ewing*, 826 F.2d at 970–01. Litigation is a concrete, adversarial test that insures the legitimacy and fairness of the law. *Boudin*, 732 F.2d at 1114 (explaining that the EAJA was passed partly to encourage challenges to improper actions by the government).

Moreover, the analysis that the *Ewing* court employed to determine that EAJA does not support an award of fees for *criminal* habeas proceedings is instructive. In *Ewing*, the Tenth Circuit highlighted that, compared to general civil practice, "[t]he volume of habeas petitions processed in the federal courts together with the opportunity for court-appointed representation suggests that there is little, if any, economic deterrent in seeking review of the legality of criminal confinement." 826 F.2d at 971; *see also* ECF No. 25 at 4. Persons in immigration proceedings are not provided with legal counsel (ECF No. 26 at 5). *See also* 8 U.S.C. § 1362 (stating that a person in immigration proceedings "shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as he shall choose"). And, compared to habeas petitions in the criminal context, very few noncitizens challenge their confinement via habeas proceedings due to lack of access to counsel (ECF No. 26 at 5). The lack of government appointed counsel and the infrequency of habeas petitions in the immigration context provide support for Petitioner's contention that individuals face a financial disincentive to seeking habeas relief in this context. The purpose of the EAJA is to ensure litigants are not deterred from seeking review of unreasonable government action. *See Jean*, 496 U.S. at 163. Thus, Congress likely intended the EAJA to support the award of attorneys' fees for immigration habeas proceedings.

In response to Respondents' argument that the award of attorneys' fees under the EAJA does not turn on the public benefit which may be derived from challenging a regulatory policy, Petitioner argues that one of the goals of the EAJA is to deter arbitrary government action (ECF No. 25 at 6; ECF No. 26 at 6). ICE has discretion in following agency policy as it relates to the confinement of particularly vulnerable individuals (ECF No. 26 at 6). The EAJA encourage challenges to government action as a means of helping to formulate better public policy. *See In re Hill*, 775 F.2d at 1040 (explaining the petitioner challenged a regulatory policy when he sought to

secure a declaratory judgment that the government's policy of excluding homosexual non-citizens without a medical certificate was improper). Unlike habeas petitions in the criminal context that are dedicated to vindicating individual rights based on the Constitution, in immigration habeas petitions, the petition constitutes a challenge to regulatory policy. *Id.* For this reason, the Court concludes that immigration proceedings as civil actions under the EAJA are consistent with—and effectuate—the statute's goals.

Therefore, for the reasons set forth above, immigration habeas petitions are included in the term "any civil action" as used in the EAJA and the waiver of sovereign immunity applies.

### B. Petitioner is Eligible to Recover under EAJA

For a petitioner to be eligible to recover under EAJA, their net worth cannot exceed two million dollars, they must be a prevailing party, they must submit their application in a timely fashion, and they must be requesting a reasonable amount. 28 U.S.C § 2412(d)(1)(A)–(B). It is not disputed that Petitioner meets all these factors (*cf.* ECF No. 25). Petitioner is an individual whose net worth did not exceed two million dollars at the time the civil action was filed (ECF No. 24 at 001). Petitioner was awarded relief from the Court when her writ of habeas corpus was granted making her a prevailing party (ECF No. 16).

Petitioner had thirty days after final judgment to file an application for fees. 28 U.S.C § 2412(d)(1)(B). The application for fees was timely as the Court entered its final judgment on November 10, 2022, and the application was submitted within thirty days after the expiration of the sixty-day period for filing an appeal. *See* Fed. R. App. P. 4(a)(1)(B).

The amount of attorneys' fees and expenses requested are reasonable. Petitioner's counsel submitted records documenting the reasonable time spent working on the appeal and the instant motion and the Respondents have not challenged the time spent by, or the hourly rates of,

11

Petitioner's counsel (ECF No. 24 at 004–012).

### C. Respondents were Not Substantially Justified in Their Practices

Additionally, Petitioner argues that Respondents' litigation position was unreasonable because of the robust caselaw in support of Petitioner's writ of habeas corpus and against detention without an individualized bond hearing (ECF No. 24 at 12).[2] Respondents argue their actions were compelled by 8 U.S.C. § 1226 and justified because Petitioner was subject to mandatory detention and not eligible for release under § 1226(c) (ECF No. 25 at 10). Respondents also argue that, contrary to Petitioner's argument, the law is far from settled in this area, and thus their litigation position was justified (*id.* at 11). The Court agrees with Petitioner.

A position is substantially justified under the EAJA if it has a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). It is not reasonable to ignore agency regulations and judicial precedent. *Quintero v. Colvin*, 642 Fed. Appx. 793, 796,798 (10th Cir. 2016) (holding it was unreasonable for the government to take the position that an examining psychologist's testimony should be given little, if any weight, because that position offended established precedent); *accord Benson v. Berryhill*, No. CV 16-1009-GJF, 2018 WL 3873671, at *3 (D.N.M. Aug. 15, 2018) ("Ignoring binding precedent—or even only *arguably* binding precedent—is a risky litigation strategy, particularly when the precedent was repeatedly cited by one's adversary. Taking that risk in this case was particularly unwise").[3] The government "bears the burden of establishing its position was "justified to a degree that could satisfy a reasonable person." *Al-Maleki v. Holder*, 558 F.3d 1200, 1207 (10th Cir. 2009) (citation omitted); *accord*

---

[2] Petitioner offers minimal briefing on the "special circumstances" element that would otherwise make the award of EAJA feed unjust. Nonetheless, Respondents do not dispute this element has been satisfied in Petitioner's favor. Accordingly, Court concludes that there is nothing to suggest an award of fees would be unjust and finds this element satisfied.

[3] Even though these are social security cases, they address recovering attorneys' fees under the EAJA which is cross-applicable to all EAJA cases more broadly.

*Scarborough v. Principi*, 541 U.S. 401, 414 (2004) ("The burden of establishing 'that the position of the United States was substantially justified,' § 2412(d)(1)(A) indicates and courts uniformly have recognized, must be shouldered by the Government." (citation omitted)).

Respondents argue that their actions were justified because there was no binding precedent regarding the issue of whether the detention under 8 U.S.C. § 1226(c) on facts like those in this case is unconstitutional (ECF No. 25 at 10-11). "[T]o be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve." *Pierce*, 487 U.S. at 566. Under the EAJA a position is "substantially justified" if it is justified to a degree that "could satisfy a reasonable person." *Quintero*, 642 F. App'x at 796 (quotations omitted). Therefore, while it is axiomatic that Respondents were not required to follow non-binding precedent, a reasonable person would have expected them to follow non-binding precedent where—as here—there are multiple cases from the same judicial district demonstrating a clear and obvious legal trend. Respondents knew that courts in this District have repeatedly and unequivocally found detention under 8 U.S.C. § 1226(c) without an individualized bond hearing unreasonable, and detention for approximately a year or more constitutionally unreasonable. Moreover, Respondents in this case were also parties in *those cases* (ECF No. 24 at 10). *See also Sheikh v. Choate*, No. 22-cv-01627-RMR, 2022 WL 17075894, at *6 (D. Colo. July 27, 2022); *Singh v. Garland*, No. 21-cv-00715-CMA, 2021 WL 2290712, at *4 (D. Colo. June 4, 2021); *Villaescusa-Rios v. Choate*, No. 20-cv-03187-CMA, 2021 WL 269766, at *3 (D. Colo. Jan. 27, 2021); *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019). Thus, it is clear that Respondents' position would not be substantially justified to a reasonable person, given Respondents' awareness of how this same legal issue—lengthy detention without individualized bond hearings—has been

consistently resolved in this District. *See, e.g., Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998) ("[U]nless the government's pre-litigation and litigation positions have a reasonable basis in both law and fact, the government's position is not substantially justified." (citation omitted)).

Respondents cite *Vacchio* for the proposition that the absence of controlling precedent made it reasonable for the respondents in that case to advance their good faith legal argument (ECF No. 25 at 11). However, in *Vacchio*, the non-binding precedent was from multiple and different judicial districts. 404 F.3d at 675. Here, there is a clear legal trend within the same District. Therefore, Respondents' detention of Petitioner without a bond hearing for over fifteen months ran afoul of cases in this District that clearly established Respondents' arguments were unavailing on the exact legal issue Petitioner's habeas petition presented (ECF No. 24 at 10). *See, e.g., Al-Maleki v. Holder*, 558 F.3d at 1209–10.

Furthermore, Respondents' interpretation of the *Singh* factors, the established legal test in the District of Colorado for assessing the constitutionality of prolonged detention, was unreasonable, particularly in light of how these factors have been consistently applied by other courts in this District (ECF No. 14 at 7–9). *See also Singh v. Choate*, 2019 WL 3943960, at *5. In addressing the first factor, the total length of detention to date, Respondents unreasonably conclude that the factor does not weigh in favor of Petitioner even though Petitioner had been detained for over fourteen months without an individualized bond hearing (ECF No. 14 at 7–8). Respondents justify their position based on the fact that eight days before Petitioner filed her habeas petition, an IJ issued a custody redetermination order denying her a change in custody (ECF No. 25 at 12). The individualized review by the IJ was brief, and focused on whether she was properly charged for removal (ECF No. 16 at 7). There was nothing in the record to suggest the IJ considered Petitioner's severe health problems (*id.*). Respondents do not cite any cases to support their

14

proposition that this brief review—which did not take into consideration or address Petitioner's severe and individualized health concerns—is sufficient to swing the first *Singh* factor in their favor (ECF No. 14 at 7–8). And courts have repeatedly rejected this litigation position regarding *Singh*'s first factor. *See e.g., Singh v. Garland*, 2021 WL 2290712 at *4–5.

Additionally, regarding the third *Singh* factor, Respondents acknowledge that this District has held that this factor favors petitioners—nonetheless, Respondents offer no explanation for and engage in no analysis detailing why the mental health services they are providing create conditions that differ from the conditions of penal confinement that have previously run afoul of detention without due process (ECF No. 14. at 8). *See also Singh v. Garland*, 2021 WL 2290712 at *4. Given the clear weight of judicial authority against Respondents' position in this District and in cases in which they have been parties, Respondents' position was unreasonable in law. Therefore, their position was not substantially justified as required under the EAJA.

Petitioner additionally argues Respondents failed to provide a clear explanation of the six *Singh* factors in their Response brief, and thus cannot meet their burden of establishing their position was justified (ECF No. 26 at 10–11). The Court agrees with Petitioner. Under the EAJA the burden of establishing that the position of the United States was substantially justified must be shouldered by the government. *Scarborough*, 541 U.S. at 414. Here, Respondents have not met their burden because they do not justify why they did not follow a clear legal trend in the District in applying the *Singh* factors, and their argument that *Singh*—the relevant and applicable test—is non-binding fails to persuade otherwise.

The Tenth Circuit has held that "EAJA fees generally should be awarded where the government's underlying action was unreasonable even if the government advanced a reasonable litigation position." *Al-Maleki*, 558 F.3d at 1207. Petitioner argues it was unreasonable for

15

Respondents to continue to detain her, given she has a mental disability which became life-threatening, because it went against their own policy, that allowed them to determine whether there is any special vulnerability that may impact custody and classification determinations (ECF No. 26 at 8–9). Respondents argue that their actions were compelled by federal statute (ECF No. 25 at 9–10). That is not the case. Respondents were not restricted or compelled by federal statute regarding the mandatory detention of Petitioner (ECF No. 26 at n.6). Petitioner quotes a former ICE official who stated, "individuals held under mandatory detention, pursuant to the Immigration and Nationality Act ("INA") § 236(c) [8 U.S.C. § 1226(c)], were released pursuant to ICE's guidelines and policies, particularly where the nature of their illnesses could impose substantial health care costs or the humanitarian equities mitigating against detention were particularly compelling" (*id.* at 9). The combination of the former ICE official's statement and ICE's own policies cited in Petitioner's Reply brief demonstrate that Respondents were not constrained by federal statute, nor obligated or required to detain her, especially in light of her documented and severe disabilities (*id.* at 6 n.6, 9). At bottom, Respondents were not substantially justified in their pre-litigation and litigation practices because they disregarded a clear legal trend in the District and their own agency policies in the underlying action. *See Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009) (holding EAJA fees should have been awarded because the ALJ contravened longstanding agency regulations and the Commissioner's subsequent defense lacked "substantial justification").

## IV. CONCLUSION

Consistent with the above analysis, the Court GRANTS Petitioner's Motion for Award of Attorneys' Fees Pursuant to the Equal Access to Justice Act. Petitioner is hereby awarded $22,601.32 in attorneys' fees under the EAJA.

Dated this 12th day of July 2023.

By the Court

_____
Charlotte N. Sweeney
United States District Judge